1

2

3                          UNITED STATES DISTRICT COURT

4                          NORTHERN DISTRICT OF CALIFORNIA

5                                   OAKLAND DIVISION

6

7    ALFONSO CARRANZA,

8                      Petitioner,                    No. C 08-2511 PJH (PR)

9       vs.                                           **ORDER DENYING HABEAS
                                                      PETITION AND DENYING
10   ROBERT AYERS, JR., Warden,                       CERTIFICATE OF
                                                      APPEALABILITY**
11                     Respondent.

12   _____/

13          This is a habeas case filed pro se by a state prisoner.  The petition is directed to a

14   denial of parole.

15          The court ordered respondent to show cause why the writ should not be granted.

16   Respondent has filed an answer and a memorandum of points and authorities in support of

17   it, and has lodged exhibits with the court.  Petitioner has responded with a traverse.  For

18   the reasons set forth below, the petition will be denied.

19                                       **BACKGROUND**

20          A jury in Los Angeles County Superior Court found petitioner guilty of second degree

21   murder, attempted murder, and attempted manslaughter with the use of a firearm.  (Pet. 3-

22   4.)  In 1987 he was sentenced to a prison term of seventeen years to life plus a

23   consecutive fourteen years.  (*Id.* at 3.)  On April 19, 2006, after a hearing before the Board

24   of Parole Hearings ("Board"), during which petitioner was represented and was given an

25   opportunity to be heard, the Board found petitioner unsuitable for parole because he "would

26   pose an unreasonable risk of danger to society and a threat to public safety if released from

27   prison."  (Ans. Ex. B, 82.)

28   ///

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   During the parole hearing, the Board accepted as true the following facts of the

2   offense, as summarized by the Los Angeles Superior Court in its ruling on petitioner's state

3   habeas petition:

> Petitioner was received in the Department of Corrections in 1989 after
> convictions for murder in the second-degree, attempted murder, and
> attempted manslaughter with the use of a firearm.  He was sentenced to
> [seventeen] years to life, plus a consecutive [fourteen] years.  His minimum
> parole eligibility date was March 15, 2007.  The record reflects that on
> November 30, 1985, [p]etitioner argued with Raul Munoz at a bar over who
> had the next game of pool.  Petitioner threatened Raul and the two engaged
> in a shoving match.  Raul then left the bar and picked up his brothers, Juan
> and Pedro.  The three brothers returned to the bar to confront [p]etitioner.
> Petitioner's friend attempted to hit Raul, but was stopped by Pedro.  The
> owner of the bar threatened to kick the entire group out if they did not stop
> fighting, so they separated and the Munoz brothers began to leave.  As they
> were leaving, [p]etitioner's friend told Raul that he wanted to speak to him
> outside.  When they reached the door, [p]etitioner pointed a gun at Raul and
> shot him in the neck from approximately [twelve] inches away.  Raul began to
> run away and [p]etitioner shot him again in the leg.  Petitioner then turned the
> gun on Juan, who was standing nearby in the parking lot and shot him once,
> killing him.  Finally, [p]etitioner shot two times at Pedro as he ran away.  Pedro
> was not hit by either shot.  Petitioner and his friend then fled the scene and
> [p]etitioner later moved out of California.  He began serving his sentence for
> this offense in 1989, after serving another sentence in another state.

15   (*Id.* Ex. A at 1.)

16   At the parole hearing, the Board reviewed petitioner's record, including the

17   circumstances of his commitment offense, his criminal history, his social history, his parole

18   plans, and his behavior in prison.  After a full hearing and consideration of all of the

19   evidence, the Board found petitioner unsuitable for parole and denied him parole for four

20   years.  (*Id.* Ex. B at 82, 87.)  The Board based its decision upon the circumstances of the

21   commitment offense, the triviality of the motive for the killing, petitioner's escalating pattern

22   of criminal conduct, his failure at previous grants of probation and attempts to correct his

23   criminality, and his need for further self-help and therapy to help petitioner understand the

24   cause of the crime.  (*Id.* at 82-85.)   In response to the Board's determination, petitioner

25   filed state habeas petitions, later denied, in the Los Angeles County Superior Court,

26   California Court of Appeal, and California Supreme Court.  (*Id.* Ex. A, D, F.)

27   On May 16, 2008, petitioner filed the instant federal habeas petition, alleging that (1)

28   the Board violated his right to due process by finding him unsuitable for parole because

there is no evidence to support the Board's decision; (2) the Board violated his right to due process by failing to apply the statutory and regulatory criteria for setting a parole release date and instead basing its decision to deny parole on the same factors that went into formulating the guidelines; (3) the Board violated petitioner's double jeopardy and due process rights by relying on the fact that multiple victims were injured or killed as a reason to deny him parole; and (4) the Board denied petitioner a fair and impartial parole hearing by relying on opposition from the district attorney and the victims' family.

**DISCUSSION**

**I.    Standard of Review**

A district court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry)*, 529 U.S. at 407-09, while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams (Terry)*, 529 U.S. at 405-406.  An "unreasonable

3

United States District Court

For the Northern District of California

1    application" of federal law occurs "if the state court identifies the correct governing legal

2    principle from [Supreme Court] decisions but unreasonably applies that principle to the

3    facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue

4    the writ "simply because that court concludes in its independent judgment that the relevant

5    state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*

6    at 411.  Rather, the application must be "objectively unreasonable" to support granting the

7    writ. *Id.* at 409.

8         "Factual determinations by state courts are presumed correct absent clear and

9    convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not

10   altered by the fact that the finding was made by a state court of appeals, rather than by a

11   state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d

12   1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present

13   clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness;

14   conclusory assertions will not do.  *Id.*  Under 28 U.S.C. § 2254(d)(2), a state court decision

15   "based on a factual determination will not be overturned on factual grounds unless

16   objectively unreasonable in light of the evidence presented in the state-court proceeding."

17   *Miller-El*, 537 U.S. at 340.

18        When there is no reasoned opinion from the highest state court to consider the

19   petitioner's claims, a federal court looks to the "last reasoned decision" of the highest state

20   court to address the merits of the petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S.

21   797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  Here, the

22   highest state court to address the merits of petitioner's claim was the Superior Court of Los

23   Angeles County.  (*See* Ans. Ex. A.)  For the reasons stated below, the state court's

24   decision was neither contrary to nor an unreasonable application of clearly established

25   United States Supreme Court precedent, nor was the state court decision based on an

26   unreasonable determination of the facts.

27   **II.    Issues Presented**

28        **A.    Respondent's Contentions**

**United States District Court**
For the Northern District of California

1    In order to preserve the issues for appeal, respondent argues that California

2 prisoners have no liberty interest in parole, and that if they do, the only due process

3 protections available are a right to be heard and a right to be informed of the basis for the

4 denial – that is, respondent contends there is no due process right to have the result

5 supported by sufficient evidence.  Because these contentions are contrary to Ninth Circuit

6 law, they are without merit.  *See Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying

7 "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v.*

8 *Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123,

9 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established

10 federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d

11 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty

12 interest in release on parole.").

13    **B.    Petitioner's Contentions**

14        1.    **Sufficiency of Evidence**

15    Petitioner claims that there is no evidence to support the Board's finding that

16 petitioner currently poses an unreasonable risk to society or a threat to public safety if

17 released from prison.  (Pet. at 9.)  He contends that the facts of his commitment offense do

18 not provide a reasonable basis to deny him parole, and that his escalating pattern of

19 criminal conduct, his failure at previous grants of probation, his failure to correct his

20 criminality and to participate in self-help programming, and the opposition to his parole by

21 the district attorney and the victims' family do not constitute "some evidence" that he poses

22 an unreasonable risk to public safety.  (*Id.* at 3-12.)

23    The state superior court rejected petitioner's claim, concluding that "the record

24 contains 'some evidence' to support the Board's finding that [p]etitioner is unsuitable for

25 parole."  (Ans. Ex. A at 1.)  The state court concluded that "the Board did not err in denying

26 [p]etitioner parole for a period of four years" because the Board's basis for the denial —

27 that the "commitment offense involved multiple crimes against multiple victims,

28 demonstrated an exceptionally callous disregard for human suffering, and had a trivial

United States District Court

For the Northern District of California

1  motive, and because until recently, [p]etitioner ha[d] failed to participate in substance

2  abuse-related self-help programs or vocational programs" — was "sufficient to justify a four-

3  year denial." (*Id.* at 2.)

4         In California, prisoners have a federally protected liberty interest in parole. *See*

5  *Sass v. Calif. Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006) (citing

6  *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002)).  According to "clearly

7  established" federal law, a parole board's decision to deny an inmate parole complies with

8  due process provided that there is "some evidence" to support the board's decision. *See*

9  *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985); *Sass*, 461 F.3d at 1128.  Under the

10  "some evidence" standard, "the relevant question is whether there is any evidence in the

11  record that could support the conclusion reached" by the board to assure that "the record is

12  not so devoid of evidence that the findings of the . . . board were without support or

13  otherwise arbitrary.'" *Hill*, 472 U.S. at 455-56, 457).

14         The task of the parole board is to determine whether the prisoner would be a danger

15  to society if he or she were released on parole. *See In re Lawrence*, 44 Cal. 4th 1181

16  (2008). Consequently, the constitutional "some evidence" standard requires that some

17  evidence exists to support a finding that the prisoner constitutes a danger to society, not

18  simply that some evidence exists of one or more of the factors listed in the regulations as

19  considerations appropriate for parole determination. *In re Lawrence*, 44 Cal. 4th at 1205-

20  06.

21         The state court was not unreasonable in concluding that there is some evidence to

22  support the Board's determination that petitioner would pose a danger to society if

23  released.  The record contains evidence to support the Board's finding of unsuitability for

24  parole, including the circumstances of the commitment offense, the triviality of the motive

25  for the killing, petitioner's escalating pattern of criminal conduct, and his failure to

26  participate in self-help or therapy programming while in prison.

27         First, the circumstances of the commitment offense:  Not only did petitioner shoot

28  Raul in the neck at very close range and then continue to shoot at him as he fled, hitting

United States District Court
For the Northern District of California

1    him in the leg, but also fatally shot Juan, who, "frozen in terror," was merely standing

2    nearby.  (Ans. Ex. B at 17.)  The record also indicates that the victims did not attack

3    petitioner or otherwise provoke him to shoot them.  Instead, as the victims were leaving the

4    bar, petitioner's friend stopped them outside and petitioner simply opened the bar's door

5    and began shooting at the brothers. (*Id.*)  After the shooting, petitioner did not call for help

6    for the victims, but instead got into a car with his friend and fled the scene.  (*Id.* at 18.)  He

7    shot at three people – Raul, Juan, and Pedro – severely injuring Raul, killing Juan, and

8    narrowly missing Pedro.  Moreover, the motive for the crime was trivial, a minor

9    confrontation over who was next in line to play pool at a bar.  (Ans. Ex. B at 15-17.)

10    Secondly, while petitioner does not have a juvenile record, his adult criminal history

11    shows an escalating pattern of criminal behavior.  Prior to being incarcerated for the

12    commitment offense, petitioner used cocaine heavily and also sold it in order to support his

13    habit. (*Id.* at 14.)  The record shows that in 1980 petitioner had been arrested for drunk

14    driving and was ordered to attend a drug and alcohol program, that in 1984 petitioner had

15    been arrested for possession of cocaine and a gun, and that in 1987, two years after

16    carrying out the commitment offense but prior to his arrest, petitioner was convicted of

17    possession of cocaine and sentenced to six years in federal prison. (*Id.* at 14-15.)  In

18    addition, during the parole hearing, petitioner admitted that prior to his arrest for the

19    commitment offense he also had shot and killed someone in another incident at a bar, but

20    was acquitted on a self-defense theory. (*Id.* at 45-47.)  Thus, petitioner's adult history prior

21    to the offense consisted of a lifestyle of drugs, alcohol, and violence.

22    Both the circumstances of the offense and petitioner's criminal history are now far in

23    the past.  Assuming for purposes of this ruling that in parole cases the passage of time can

24    undermine the evidentiary value of the commitment offense and other equally old evidence

25    – such as preconviction history – the relevant time here is not the time petitioner had

26    served on the indeterminate life sentence as of the date of the hearing, but rather the time

27

28

7

**United States District Court**
For the Northern District of California

1    that had passed since the offense.[1]  The offence was committed in 1985, so that time was

2    nearly twenty years.  However, the court concludes that given the egregious nature of the

3    offense and the seriousness of petitioner's record, these facts still retained some

4    evidentiary value at the time of the hearing.

5            Finally, petitioner's failure to participate sufficiently in self-help or therapy

6    programming while in prison supports the Board's determination that petitioner is unsuitable

7    for parole.   At the hearing, petitioner admitted that he had used cocaine heavily during all

8    of the negative circumstances in his life, causing him to live "a life of destruction" that was

9    "out of control."  (Ans. Ex. B at 20, 22, 45.)  Despite knowing that his substance abuse

10   problems contributed to his history of criminality, petitioner had not participated in any self-

11   help programming until March of 2006, one month prior to his initial parole hearing.[2]  (*Id.* at

12   31-32, 49.)  This by itself is some evidence that petitioner posed an unreasonable risk to

13   society and was not suitable for parole.

14          The state court's decision that there was some evidence to support the Board's

15   finding of petitioner's unsuitability for parole was not contrary to nor an unreasonable

16   application of federal law.  Accordingly, petitioner's claim is denied.

17   **B.    "*Biggs* Claim"**

18          Although he does not state it as a separate issue, petitioner does refer in the

19   argument for his first issue to *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), and to his

20   purported rehabilitation.  This may be an attempt to present what will be referred to here as

21   a "*Biggs* claim."

22          In a line of relatively recent cases the Ninth Circuit has discussed the

23   constitutionality of denying parole when the only basis for denial is the circumstances of the

24   _____

25          [1]  Petitioner was sentenced in 1987, but did not begin serving the state sentences until
     1989, when he completed his federal sentence on a another matter.   He served the
26   determinate sentence first.  He did not begin serving his indeterminate life term until March of
     1997.  At the time of the hearing he had served nine years on his sentence of seventeen years
27   to life.  He was forty-seven years old.

28          [2]  However, the record indicates that petitioner had been on the wait list for AA and NA
     for two years.  (Ans. Ex. B at 31, 50.)

United States District Court

For the Northern District of California

1    offense.  *See Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007);  *Sass v. California Bd.*

2    *of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs*, 334 F.3d at 915-17.

3           In *Biggs* the court said that it might violate due process if the Board were to continue

4    to deny parole to a prisoner because of the facts of his or her offense and in the face of

5    evidence of rehabilitation.  334 F.3d at 916-17.  No legal rationale for this statement was

6    provided, and it was unclear whether the court was suggesting that the continued denial of

7    parole would be a new sort of due process violation or whether it was simply expressing the

8    thought that with the passage of time the nature of the offense could cease to be "some

9    evidence" that the prisoner would be a danger if paroled.  This ambiguity was helpfully

10   cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different

11   from a "*Biggs* claim."  *Irons*, 505 F.3d at 853-54.  It appears, putting together the brief

12   discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole

13   based on long-ago and unchangeable factors, when overwhelmed with positive evidence of

14   rehabilitation, would be fundamentally unfair and violate due process.  As the dissenters

15   from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might

16   be dictum is controlling authority if the issue was presented and decided, even if not strictly

17   "necessary" to the decision.  *Irons v. Carey*, 506 F.3d 951, 952 (9th Cir. Nov. 6, 2007)

18   (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400

19   F.3d 744, 751 n. 8 (9th Cir. 2005)).

20          Depending on whether the discussion of dictum in the dissent from denial of

21   rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized a

22   "*Biggs* claim" as grounds for relief from a habeas denial.

23          Petitioner has failed to establish the predicate for his *Biggs* claim.  For one thing, this

24   was his first parole hearing; obviously, he has not suffered the repeated denials based on

25   the circumstances of the crime which the *Biggs* court suggested might violate due process.

26   For another, petitioner's parole was not denied solely because of the circumstances of his

27   offense, but also because of his failure to participate in alcohol and drug programs.  And

28   finally, assuming for purposes of this discussion that *Biggs* and *Irons* recognized an

United States District Court
For the Northern District of California

1  abstract due process right not to have parole repeatedly denied on the basis of the facts of

2  one's crime and in the face of extensive evidence of rehabilitation, and also assuming

3  arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief

4  on this theory, because as there is no clearly-established United States Supreme Court

5  authority recognizing a "*Biggs* claim."  The state courts' rulings therefore could not be

6  contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

7  **C.    Setting a Parole Release Date**

8         Petitioner contends that the Board violated his right to due process by failing to

9  follow and apply California's statutory and regulatory criteria for setting a parole release

10 date.  (Pet. at 21.)  State law claims such as this cannot be the basis for federal habeas

11 relief, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for

12 violations of state law or for alleged error in the interpretation or application of state law),

13 and petitioner cannot make his state law claim into a federal claim by simply labeling it "due

14 process," *Longford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (petitioner may not

15 "transform a state-law issue into a federal one merely by asserting a violation of due

16 process.").  And in any event, there was no violation of state law.  The Board is under no

17 duty to set a parole release date until after it has determined that a prisoner is suitable for

18 parole.  *In re Dannenberg*, 34 Cal. 4th 1069, 1071 (Cal. 2005).  This claim is without merit.

19 **D.    Double Jeopardy Claim**

20        Petitioner was given consecutive sentences for the attempted murder of Raul and

21 the murder of Juan.  He asserts that the Board's use of the "multiple victims" consideration

22 in denying parole violated his rights under the Double Jeopardy Clause.  The denial of

23 parole, however, is not the imposition of more than one punishment for the same offense

24 and thus does not come within the scope of the Double Jeopardy Clause.  *Mahn v. Gunter*,

25 978 F.2d 599, 602 n. 7 (10th Cir.1992) (parole determination that did not lengthen original

26 sentence did not result in double punishment); *Alessi v. Quinlan*, 711 F.2d 497, 501 (2d

27 Cir.1983) (denial of parole "is neither the imposition nor the increase of a sentence, and it is

28 not punishment for purposes of the Double Jeopardy Clause").  This claim is without merit.

**United States District Court**
For the Northern District of California

1  **E.      Opposition to Parole by the District Attorney and Victims' Family**

2        Petitioner contends that the Board's consideration of opposition to his parole by the

3  victim's next of kin and by the district attorney, and the Board's inclusion of that opposition

4  in its list of factors relied upon to deny parole, "create[d] a contamination by extraneous

5  influences in the parole proceedings."   There is no federal constitutional limitation on the

6  evidence a parole board may receive or upon which it may rely in making its decision.  This

7  claim is without merit.

8                                       **CONCLUSION**

9        The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

10       **IT IS SO ORDERED.**

11  Dated:  April 20, 2010.                _____
                                                      PHYLLIS J. HAMILTON
12                                                   United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26  P:\PRO-SE\PJH\HC.08\CARRANZA2511.RUL.wpd

27

28

11